# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 16-CV-01593 (SJ)(RER)

———————————

BARBA MENDEZ MIGUEL,
INDIVIDUALLY AND ON BEHALF OF ALL OTHER COLLECTIVE PERSONS SIMILARLY SITUATED,

Plaintiffs,

vs

MI BELLA PUEBLA CORP., ANTOLIN TEUTLE, GROMEX CORPORATION, EDUARDO TEUTTLE, CHOLULA PUEBLA CORP., ERIC ZAQCATELCO, AND JOHN DOES #1-10,

Defendants.

———————————

**REPORT & RECOMMENDATION**

September 6, 2017
———————————

**to the Honorable Sterling Johnson, Jr.,
Senior United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Barba Mendez Miguel ("Plaintiff") commenced this collective action on March 31, 2016, claiming multiple violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq*, and New York Labor Law ("NYLL"), NYLL §§ 190 and 650 *et seq*, by Mi Bella Puebla Corp. ("Mi Bella"), "Gromex Corp. ("Gromex"), Cholula Puebla Corp. ("Cholula") (together with Mi Bella and Gromex the "Corporate Defendants"), Antolin Teutle ("A. Teutle"), Eduardo Teuttle ("E. Teutte"), and Eric Zacatelco ("Zacatelco") (together with A. Teutle and E. Teutte the "Individual Defendants") (collectively the "Defendants").[1] (Dk.t Nos. 1, 13). The Defendants failed to answer or otherwise respond, resulting in entry of default. (Dkt. Nos. 23, 28). Plaintiff then

---

[1] Only Mi Bella and A. Teutle were named in the original complaint, (Dkt. No. 1), with the remaining Defendants added pursuant to an amended complaint (the "Amended Complaint") filed by leave of this Court on January 9, 2017, (Dkt. No. 13; Order Dated 12/21/2016). To the extent that the Amended Complaint named additional John Doe defendants, these claims are waived due to Plaintiff's failure to effect timely service.

1

moved for default judgment pursuant to Fed. R. Civ. P. 55. (Dkt. No. 29). Your Honor has referred this matter to me for a report and recommendation. (Order Dated 5/25/2017). For the reasons set forth herein, I respectfully recommend that Plaintiff's motion be granted and judgment entered in the amount of $383,520.23 - consisting of $188,040 in unpaid overtime, $8,355.15 in unpaid spread of hours, $179,625.08 in liquidated damages, and $7,500 in statutory damages - plus pre- and post- judgment interest.

## BACKGROUND

Over the course of this case's sixteen month history, Plaintiff has been afforded the opportunity to amend his original complaint, (Dkt. No 13), submit and then revise motions for default judgment, (Dkt. Nos. 8, 29), and provide uncontested evidence of damages, (Dkt. Nos. 29-1, -18). Nonetheless, Plaintiff has failed to develop a clear or consistent record and it is only thanks to the minimal evidentiary burden imposed on default judgments that this Court can recommend finding in his favor.

According to the Amended Complaint, Plaintiff worked at a local business (the "Business") from June 1, 2010 to the present. (Dkt. No 13 ("Amended Complaint") at ¶ 45). Directly contradicting this, in an affidavit submitted in support of the instant motion Plaintiff states that his employment commended two years earlier, in 2008, and terminated in May 2016, eight months before the Amended Complaint was filed. (Dkt. No. 29-18 ("Plaintiff's Affidavit") at ¶ 6(a)-(b)). Initially, the Business is referred to as a "deli/grocer/restaurant[.]" (Amended Complaint at ¶ 3-5). Later, it is described as "selling produce, grocery and prepare[d] food items[.]" *Id* at ¶ 28. The description is then pared back to include only "selling produce and grocery items" with no mention made of prepared food. (*Id* at ¶ 44).

During the relevant time period, whether 2010 to the present or 2008 to 2016, Plaintiff was employed as "a store helper and as delivery man[.]" *Id* at ¶ 45. In this capacity, Plaintiff was required to work 12 hours on week days and 19 hours on Saturdays and Sundays, with no vacations or holidays. *Id* at ¶ 46. In compensation for this 98 hour work week, he was paid a flat salary of $400 per week. *Id* at ¶¶ 47-48. Plaintiff's Affidavit initially parrots the language of the Amended Complaint regarding pay and hours. (Plaintiff's Affidavit at ¶ 6(c)). In the next breath, however, Plaintiff states that he only worked 72 hours per week from 2008 to 2013, increasing to 98 hours in 2014, and that during this initial period he was only paid $350 per week. *Id* at ¶ 6(d). The Amended Complaint and Plaintiff's Affidavit are at least consistent in claiming payment was for a 40 hour work week and that no overtime or spread of hours pay was provided. (Amended Complaint ¶¶ 47, 49-50; Plaintiff's Affidavit ¶ 6(d)).

## DISCUSSION

Rule 55 imposes "a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must request entry of default by the clerk of the court. *Id.* (citing Fed. R. Civ. P. 55(a)). Once default has been entered against the non-responsive parties, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Where, as here, the procedural requirements have been satisfied, the defaulting party is deemed to have admitted all well-pleaded factual allegations in the complaint. *Greyhound Exhibitgroup v.*

2

*E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). It is the court's responsibility to determine if these well-pleaded facts establish the defendants' liability as a matter of law. *Gesualdi v. Ava Shypula esting & Inspection, Inc.*, No. 13-CV-1873 (DRH)(GRB), 2014 WL 1399417, at *4 (E.D.N.Y. Apr. 10, 2014) (citing *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)). The court "need not credit the plaintiff's legal conclusions." *Priestly*, 647 F.3d at 504.

Unlike liability, damages must have an evidentiary basis such that they can be "ascertained with reasonable certainty." *Cement and Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). Regardless of what this evidence shows, the plaintiff's recovery is limited to the amount and type established in the complaint. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *see also Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007). Thus, Plaintiff will first have to establish liability based on the factual allegations in the Amended Complaint and then establish damages on the basis of his evidentiary submissions, but only as to those violations of the FLSA and NYLL for which liability has already been determined and limited to the amount established by the Amended Complaint.

## I.   FLSA & NYLL Coverage

Plaintiff's claims are brought pursuant to the FLSA and NYLL. Liability under the FLSA and NYLL requires an employer-employee relationship. *Murphy v. Heartshare Human Serv. of New York*, No. No 17-CV-1033 (SMG), 2017 WL 2378024, at *3 (E.D.N.Y. June 1, 2017). The FLSA defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Unhelpfully, the FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d).[2] The term person extends to both individuals and entities. 29 U.S.C. § 203(d).

Like its federal counterpart, New York law provides a circular definition of the term employer. NYLL defines "employer" as "any person ... employing any individual in any occupation, industry, trade, business or service" or "any individual ... acting as employer." NYLL §§ 190(3), 651(6). Employed is defined as "permitted or suffered to work." *Id*. § 2(7).

Claims under either statute are limited by the applicable statutes of limitations. Willful violations of the FLSA are governed by a three year statute of limitations. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 129, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (citing 29 U.S.C. § 255(a)). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited[.]" *Id.* at 133. Under NYLL the statute of limitations is six years, regardless of willfulness. NYLL §§ 198(3). Plaintiff commenced this action on March 31, 2016. (Dkt. No. 1). Because he claims a willful violation, (Amended Complaint at ¶¶ 48-9), any violation of the FLSA after March 31, 2013 will be compensable. Violations of

---

[2] The FLSA also requires the employee to be "employed in an enterprise engaged in commerce." 29 U.S.C. § 207(a)(1). This requirement is satisfied where the employee handles "goods or materials that have been moved in or produced for commerce" and the enterprise has "annual gross volume sales…not less than $500,000[.]" 20 U.S.C. § 203(s)(1)(i) & (ii). Plaintiff's pleadings have satisfied this requirement.

3

NYLL after March 31, 2010 will also be compensable.

### 1. The Individual Defendants May Be Held Liable Under The FLSA & NYLL

The existence of an employer-employee relationship is judged on the basis of economic realities, not technical concepts. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). The Second Circuit has "established four factors to determine the economic reality of an employment relationship: whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id* at 104-5 (internal quotations omitted). Under this definition, an entity or individual not formally recognized as an employer may still be found liable where they maintained "functional control of the employee". *Chuchuca v. Creative Customs Cabinets Inc.*, No. 13-CV-2506 (RLM), 2014 WL 6674583, at * 6 (E.D.N.Y. Nov. 25, 2014) (citations omitted). For the purposes of NYLL, the existence of an employer-employee relationship is based on "the degree of control exercised by the purported employer." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F.Supp.3d 19, 34 (E.D.N.Y. 2015) (internal quotations omitted).

Plaintiff initially claims that he was an employee of Mi Bella, A. Teutle, Gromex, and Cholula. (Amended Complaint at ¶ 1). Conspicuously absent from this list are E. Teuttle and Zacatelco. These Defendants are subsequently identified and, along with A. Teutle, described as the "owner, manager, officer, principal or agent" of the Corporate Defendants. *Id* at ¶¶ 3-5. The Individual Defendants are further described as having "possessed operational control over Defendant Corporation[s]", "determined wages and compensation" and "established [employee] schedules[.]" *Id* at ¶¶ 21-26. On the basis of these facts, I conclude that the Individual Defendants were employers within the meaning of the FLSA and NYLL.

### 2. The Corporate Defendants May Be Held Liable Under The FLSA & NYLL

Plaintiff has named three corporate defendants, claiming each was his employer. Both the FLSA and NYLL recognize that an employee may have multiple employers. *Chuchuca*, 2014 WL 6674583, at * 6 ("An employee may simultaneously have multiple 'employers' for the purposes of determining responsibility under the FLSA"); *Chen v. JP Standard Const. Corp.*, No. 14-CV-1086 (RLM)(MKB), 2016 WL 2909966 at *6 (E.D.N.Y. Mar. 18, 2016) ("[L]ike the FLSA, for the purposes of the NYLL, an employee may have multiple 'employers.'"). Plaintiff claims that the Corporate Defendants were "associated and joint employers." (Amended Complaint at ¶ 31). Alternatively, they are described as "a single employer[.]" *Id* at ¶¶ 34-37. Because these are legal conclusions they need not be credited.

"[J]oint employment arises when the employee 'performs work which simultaneously benefits two or more employers' and 'one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee.'" *Ansoumana v. Gristede's Operating Corp.*, 255 F.Supp.2d 184 (S.D.N.Y. 2003) (quoting 29 C.F.R. § 791.2(b)). Courts determine if entities are joint employers based a 6 factor test. *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 68 (2d Cir. 2003) (citations omitted). Joint

4

employment may also be found where multiple employers "separately employ an employee and are sufficiently associated with or related to each other with respect to the employee." *Murphy*, 2017 WL 2378024, at *5 (quoting 29 C.F.R. § 791.2). Alternatively, "[i]n some circumstances, multiple businesses may constitute a single enterprise under the FLSA[.]'" *Chuchuca*, 2014 WL 6674583 at *6 (citations omitted).

The precise ownership structure of the Business is not described. The Amended Complaint does not identify which, if any, Corporate Defendant paid Plaintiff's salary or benefited from his labor. Nor is the relationship between the Corporate Defendants clearly established, beyond noting that all three are owned by the Individual Defendants and are incorporated at the same address. (Amended Complaint at ¶¶ 14, 16, & 18). As such, the Court is unable to determine if they qualify as joint employers or alternatively as a single enterprise.

Despite this defect in the pleadings the facts establish that some form of employment relationship existed. Plaintiff states that he was an employee of Mi Bella, Gromex, and Cholula. *Id* at ¶ 1. Due to their default, the Corporate Defendants have admitted this statement as true. Additionally, Plaintiff claims that "Defendants currently own and operate a company that provides services…including…handling, processing, sales, shipping and delivery of produce and other grocery items." *Id* at ¶ 44. Based on these facts I conclude that all three Corporate Defendants maintained ownership stakes in the Business, which in turn employed Plaintiff.

## II. Unpaid Overtime

Plaintiff has raised claims for failure to pay overtime wages. (Amended Complaint at ¶62). Both the FLSA and NYLL require employers to pay overtime wages, equal to one and one-half the employee's regular salary, for every hour worked in excess of forty hours in any given week. 29 U.S.C. § 207(a); NYLL § 651; 12 NYCRR § 142-2.2. A plaintiff must plead sufficiently detailed information to "support a reasonable inference that they worked more than 40 hours per week." *Kleitman v. MSCK Mayain Olam Habba Inc.*, No. 11-CV-2817 (SJ)(JMA), 2013 WL 4495671, at *4 (E.D.N.Y. Aug. 20, 2013). Plaintiff has satisfied this requirement by asserting that he worked 98 hours per week and was paid a flat weekly salary. (Amended Complaint at ¶¶ 46-7 & 61-2).

Having established liability, Plaintiff must provide an evidentiary basis such that damages can be "ascertained with reasonable certainty." *Metro Foundation Contractors, Inc.*, 699 F.3d at 234. When a defendant defaults, they deprive the plaintiff "of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages." *Santillan v. Henao*, 822 F. Supp.2d 284, 293–94 (E.D.N.Y. 2011). In such situations, a plaintiff's sworn declarations "containing information as to hours worked and rates of pay based on estimation and recollection," even if the information provided is general and not detailed, is considered a sufficient basis for the determination of damages. *Id* at 293; *Herrera v. Tri-State Kitchen and Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *8 (E.D.N.Y. March 31, 2015) (finding inquest hearing unnecessary where plaintiffs submitted sworn statements regarding their pay rates and hours worked).

5

Plaintiff's Affidavit is sufficient evidence. Based on this evidence Plaintiff's regular hourly rate of pay must be established. The regular hourly rate of pay is obtained by dividing the total weekly pay by the total number of hours work. *Bedasie v. Mr. Z Towing, Inc.*, 2017 WL 1135727, at *31 (E.D.N.Y. Mar. 24, 2017). Under New York's hospitality wage order, however, the regular hourly rate for employees in the hospitality industry is "calculated by dividing the employee's total weekly earnings [by] 40 hours." 12 NYCRR § 146-3.5(b). Plaintiff's description of his employment, as contained in the Amended Complaint, is inconsistent. However, the pleadings support the reasonable inference that Plaintiff worked in a restaurant and was primarily employed delivering prepared food items, placing him in the hospitality industry. This view is supported by the legal assertions in the Amended Complaint, which reference the "'overtime wage order'…codified at N.Y.C.R.R. Tit. 12 §§…146," and calculate damages based on a 40 hour work week. (Amended Complaint at ¶¶ 2 & 71). Additionally, if Plaintiff did not work in the hospitality industry his pleadings would demonstrate an hourly rate of approximately $4 per hour, well below minimum wage, yet at no point does Plaintiff raise a minimum wage claim.

According to Plaintiff's Affidavit, prior to 2014 he was paid $350 weekly for 72 hours of work. (Plaintiff's Affidavit at ¶ 6(d)). This represents a regular rate of $8.75 per hour ($350 / 40 hours). Plaintiff is therefore entitled to unpaid overtime of $13.125 an hour ($8.75 * 1.5). He is owed unpaid overtime wages on 32 hours per week (72 hours - 40 hours) for 195 weeks for a total of $81,900 ($13.125 * 32 hours per week * 195 weeks). Beginning in 2014, and continuing until May 2016, Plaintiff worked 98 hours and received $400 per week. This represents a regular rate of $10 per hour ($400 / 40 hours). Plaintiff should have received an additional $15 per hour ($10*1.5) for overtime. He is owed unpaid overtime wages on 58 hours per week (98 hours - 40 hours) for 122 weeks for a total of $106,140 ($15 * 58 hours per week * 122 weeks). Defendants are therefore liable for a combined $188,040 in unpaid overtime wages.

## III.     Spread of Hours

Under NYLL's "spread of hours" employees are also entitled to an additional hour of pay, at the prevailing minimum wage, for every day they work in excess of 10 hours. 12 NYCRR §§ 142-2.4, -2.18. Spread of hours wages are derivative of minimum wage claims and generally cannot be asserted by employees earning more than minimum wage. *See Sosnowy v. A. Perri Farms, Inc.*, 764 F.Supp.2d 457, 473-74 (E.D.N.Y. 2011).

As of January 1, 2011, however, amendments to NYLL "extended spread of hours protection to 'all employees in restaurants…regardless of a given employee's regular rate of pay.'" *Guardado v. 13 Wall Street, Inc.,* No. 15-CV-2482 (DRH)(SIL), 2016 WL 7480358, at *9 (E.D.N.Y. Dec. 2, 2016) (quoting *Xochimitl v. Pita Grill of Hell's Kitchen, Inc*., No. 14CV10234, 2016 WL 4704917, at *7 (S.D.N.Y. Sept. 8, 2016)). According to the Amended Complaint, Plaintiff worked in excess of 10 hours per day every day of his employment, but did not receive spread of hours pay. This is sufficient to establish the Defendants' liability.

Calculating damages, however, proves more difficult. According to Plaintiff's Affidavit, between 2008 and 2013 he worked 72 hours per week. (Plaintiff's Affidavit at ¶ 6(d)). Nowhere does Plaintiff

6

state how many days he worked per week during this period, making it impossible to determine how many days per week, if any, he worked in excess of 10 hours. Assuming Plaintiff worked seven days a week, he would have averaged 10 hours and 17 minutes per day (72 hours / 7 days). Plaintiff must, at a minimum, have worked in excess of 10 hours one day per week. Accordingly, between January 1, 2011 and December 30, 2013 Plaintiff is entitled to one hour of extra pay per week at the prevailing minimum wage of $7.15 per hour. NYLL § 652 (2009). Plaintiff is entitled to $1,115.40 ($7.15 * 156 weeks).

After 2013, Plaintiff worked in excess of 10 hours per day seven days per week and is therefore entitled to an additional hour of pay, at the prevailing minimum wage, for every day worked. Between December 31, 2013 and December 30, 2014, the prevailing minimum wage was $8.00. NYLL § 652 (2009). Plaintiff is entitled to an additional $2,912 ($8 * 364 days). On December 31, 2014 the minimum wage was increased to $8.75. *Id.* Between that date and December 30, 2015, he should have received $3,193.75 ($8.75 * 365 days). 2013 NY Reg Text 339656 (NS); *see also* https://labor.ny.gov/stats/minimum_wage.asp. As of December 31, 2015 the minimum wage within the City of New York, for employers with fewer than 11 employees, was increased to $9.00 per hour. *Id.* Between that date and Plaintiff's final day of employment on May 4, 2016, he was entitled to $1,134 ($9.00 * 126 days). Defendants are liable for a total of $8,355.15 in unpaid spread of hours wages.

### III. Liquidated Damages

Plaintiff seeks an award of liquidated damages. (Amended Complaint at ¶2). The FLSA provides that an employer will be liable for liquidated damages equal to the amount owed for "unpaid minimum wages, or ... unpaid overtime compensation." 29 U.S.C. § 216(b). NYLL provided for 25% liquidated damages until April 9, 2011, when it was increased to 100% of the total unpaid overtime. NYLL § 198(1-a); *see also Fermin*, 93 F.Supp.3d at 48. Plaintiff cannot receive double liquidated damages by collecting under both statutes. *Zhang v. Red Mountain Noodle House Inc.*, No. 15-CV-628 (SJ) (RER), 2016 WL 4124304, at *4 (E.D.N.Y. July 5, 2016).

Between March 31, 2010 and April 9, 2011, the Defendants failed to pay Plaintiff a total of $22,360.10, representing $22,260 in unpaid overtime ($13.125 * 32 hours per week * 53 weeks) and $100.10 in unpaid spread of hours ($7.15 * 14 weeks). Plaintiff is therefore entitled to an additional $5,590.03 ($22,360.10 * .25). For the remainder of Plaintiff's employment, Defendants failed to pay him a total of $174,035.05, representing $165,780 in unpaid overtime (($13.125 * 32 hours per week * 142 weeks) + $106,140) and $8,255.05 in unpaid spread of hours (($7.15 * 142 weeks) + $2,912 + $3,193.75 + $1,134). Plaintiff is therefore entitled to an additional $174,035.05 ($174,035.05*1.00) for a total of $179,625.08 in liquidated damages.

### IV. Statutory Damages

Plaintiff seeks statutory damages for violations of New York's Wage Theft Prevention Act (the "WTPA"). Between April 9, 2011 and February 26, 2015, the WTPA required employers to provide written wage notices "at the time of hiring, and…each subsequent year of the employee's employment[.]" NYLL § 195(1-a) (eff. Apr. 9, 2011). Employees who did not receive proper wage notices were entitled to statutory damages of $50 per week to a

7

maximum of $2,500. *Cabrera v. 1560 Chirp Corp.*, No. 15cv8194 (TPG) (DF), 2017 WL 1289349, at *6-7 (S.D.N.Y. Mar. 6, 2017). Beginning on February 27, 2015, the WTPA was amended such that the annual notice requirement was eliminated. NYLL § 195(1)(a) (eff. Feb. 27, 2015). Statutory damages were also increased to $50 per *day* to a maximum of $5,000. NYLL § 198(1-b).

According to Plaintiff, Defendants failed to "provid[e] a proper wage notice…at the beginning of employment or annually thereafter[.]" (Amended Complaint at ¶ 54). Plaintiff is not entitled to damages for failure to provide a wage notice at the time of hiring. *Leevson v. Aqualife USA, Inc.*, 183 F.Supp.3d 397, 408 (E.D.N.Y. 2016) (finding that the WTPA does not apply retroactively and that employees hired prior to 2011 are not entitled to damages for failure to provide a wage notice at time of hiring). Nor is he entitled to damages for failure to provide annual wage notification in 2015 and 2016. Between the enactment and subsequent amendment of the WTPA, however, Plaintiff is entitled to the statutory maximum of $2,500 for failure to provide annual wage notices. *Saucedo v. On the Spot Audio Corp.*, No. 16 CV 00451 (CBA)(CLP), 2016 WL 8376837, at *14 (E.D.N.Y. Dec. 21, 2016) (report and recommendation adopted 2017 WL 780799).

The WTPA also requires employers to provide wage statements for each pay period. NYLL § 195(3) (eff. Apr. 9, 2011). Originally, employees were entitled to statutory damages of $100 per week, for each week in which wage statements were not provided, to a maximum of $2,500. NYLL § 198(1-d) (eff. Apr. 9, 2011). Following the WTPA's 2015 amendment, available damages were increased to $250 per work *day*, to a maximum of $5,000. NYLL § 198(1-d) (eff. Feb. 27, 2015). Where an employee began work prior to the amendment but continued his employment after the amendment, the higher maximum damages are available. *Armando Cazarez v. Atlantic Farm & Food Inc.*, No. 15 CV 2666 (CBA)(RML), 2017 WL 3701687, at *5 (E.D.N.Y. May 31, 2017) (report and recommendation adopted 2017 WL 3701479).

Plaintiff alleges that he never received wage statements. (Amended Complaint at ¶ 53). Between April 9, 2011 and February 26, 2015, Plaintiff worked a total of 202 weeks. At $100 per week, Plaintiff is entitled to $20,200 (202 weeks * $100 per week) in statutory damages. Between February 27, 2015 and Plaintiffs final day of employment in May of 2016 Plaintiff worked over 400 days. At $250 per day, this is more than sufficient to warrant an award of the statutory maximum $5,000 in damages. As such, Plaintiff is entitled to the $7,500 in combined statutory damages for wage notice and wage statement violations.

**V.**     **Pre- and Post-Judgment Interest**

Under the FLSA, pre-judgment interest is not available where liquidated damages have already been awarded. *Valdez v. H & S Rest. Operations, Inc.*, No. 14-CV-4701 (SLT)(MDG), 2016 WL 3079028, at *6 (E.D.N.Y. Mar. 29, 2016) *adopted* 2016 WL 3087053. However, Plaintiff may recover both liquidated damages and pre-judgment interest under NYLL. NYLL § 198 (1)(a); *see also Fermin*, 93 F. Supp. at 48. New York's pre-judgment interest rate is 9% per annum. N.Y. CPLR § 5004. Courts usually select the median date between when the action was filed and the earliest date on which the cause of action existed. *Gunawan v. Sake Sushi Rest.*, 897 F.Supp.2d 76, 93 (E.D.N.Y. 2012). As such, I recommend that Plaintiff be awarded pre-judgment interest on his claim at

8

a rate of 9% per annum, to accrue from April 1, 2013 through entry of judgment.

Plaintiff is also entitled to post-judgment interest pursuant to 28 U.S.C. § 1961(a). Post judgment interest rates are calculated "from the date of the entry of judgment at [the federal] rate equal to the weekly average 1-year constant maturity Treasury yield…for the calendar week preceding the date of judgement." 28 U.S.C. § 1961(a). The Second Circuit has found that a post-judgment award, under § 1961, is "mandatory." *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004). Accordingly, I respectfully recommend that Plaintiff be awarded post-judgment interest on all sums awarded, commencing once the Clerk of the Court enters judgment and continuing until the date of payment.

## VI.   Costs & Fees

Under the FLSA and NYLL, a prevailing plaintiff is entitled to recover costs from the defendant. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). However, only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. *Moon v. Kwon,* 2002 WL 31512816, at *30–31 (S.D.N.Y. Nov. 8, 2002) (quoting *Kuzma v. IRS,* 821 F.2d 930, 933–34 (2d Cir.1987)). NYLL also provides for the shifting of reasonable attorney's fees, but "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates". *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Plaintiff has failed to provide any evidentiary basis upon which costs and fees may be calculated. Consequently, no such award can be made.

## **CONCLUSION**

Based on the foregoing, I respectfully recommend that: (1) the Court grant Plaintiff's motion for a default judgment and (2) award Plaintiff damages in the amount of $383,520.23, including $188,040 in unpaid minimum wage, $8,355.15 in spread-of-hours pay, $179,625.08 in liquidated damages, and $7,500 in statutory damages, plus pre- and post-judgment interest.

Plaintiff is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Sterling Johnson, Jr., within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

SO ORDERED

*Ramon E. Reyes, Jr.*
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: September 6, 2017
         Brooklyn, NY